## JOSEPHINE HILL v. STATE.

No. A-1984. Opinion Filed June 21, 1913.

(132 Pac. 950.)

1. CONSTITUTIONAL LAW—Waiver of Right. A defendant in a criminal case may waive any right, not inalienable, given him by the statute or the Constitution, which can be relinquished without affecting the rights of others, and without detriment to the community at large; and such waiver may be made either by express agreement or by conduct, or by a failure to insist upon the right in seasonable time.

2. SENTENCE AND COMMITMENT—Waiver of Formalities. Where a defendant has pleaded guilty to a crime, and as soon as the plea is entered, the court, in the presence of the counsel for the defendant, asks the defendant if he desires to waive delay and receive sentence at once, and one of his counsel asks the court to sentence the defendant at once and have the matter gotten through with, to which the defendant assents, the defendant cannot afterwards be heard to complain that he was not asked before being sentenced what reasons, if any, he had to give why sentence should not be pronounced against him.

(Syllabus by the Court.)

*Appeal from District Court, Muskogee County;*
*R. C. Allen, Judge.*

Josephine Hill pleaded guilty to forgery, and appeals. Affirmed.

On the 22d of February, 1913, the appellant being on trial in the district court of Muskogee county, the following judgment was entered:

"Comes now the state, by its attorney, and comes also the defendant in person and by her attorneys, and comes also the jury in this case, and the taking of testimony is resumed; and, the state having completed its testimony in chief, the defendant now withdraws her former plea of not guilty, and now says she is guilty of the crime as charged in the information in this case. The defendant now waives time for sentence, and requests immediate sentence. Whereupon the defendant is brought to the bar of the court in the custody of the sheriff of said county of Muskogee; and, it being demanded of her what she has to or can say why sentence of the law upon her plea of guilty of the crime of forgery, first degree, heretofore entered on this date, shall not be pronounced against her, she says that she has nothing further or other to say than she has heretofore said. Whereupon, the premises being seen and by the court well and sufficiently understood, it is by the court considered, ordered, and adjudged that the said Josephine Hill, for her crime aforesaid, be imprisoned in the penitentiary situated at McAlester, Okla., for the term and period of seven (7) years from February 22, 1912, and that she pay the state of Oklahoma a fine of —————— dollars, together with all costs in and about this prosecution laid out and expended, and that they have execution therefor. It is further ordered that the sheriff of this county, in whose custody the said Josephine Hill is now here committed, receive and safely keep and convey the body of the said Josephine Hill hence to said penitentiary without delay and deliver her to the custody of the keeper of said penitentiary, who will receive and safely keep the said Josephine Hill in said penitentiary, in execution of the sentence aforesaid, and in conformity with the same for the full period of time aforesaid. And it is further ordered that the clerk furnish the sheriff of this county with two duly certified copies of this judgment, sentence, and order, one of which shall be delivered to the keeper of said penitentiary, and the other returned by the sheriff of this county with a full and true account of the execution of the same."

Thereafter, on the 22d day of March, 1913, the defendant filed a motion in said case to correct the judgment and sentence thereof, and also to vacate and set aside said judgment.

The motion is supported by a number of affidavits, all of which are to the same effect, and only one of which will be given:

"M. L. Leith, of lawful age, being first duly sworn, deposes and says: That he was one of the attorneys in the case of the State of Oklahoma v. Josephine Hill, No. 1,228, in the district court of Muskogee county, Okla., and that he was present at all times, and during all proceedings in said cause, and that at the time the purported sentence was passed upon said defendant, the Honorable R. C. Allen, the presiding judge of said court trying said cause, did not ask said defendant if she had anything to say why the said sentence of the law should not now be passed upon her, the said defendant, or words to that effect; nor did the clerk of said court, under the direction of said court, ask said defendant, Josephine Hill, if she had anything to say why the sentence of the law should not now be passed upon her, or words to that effect. Further affiant saith not. M. L. Leith."

Upon the hearing of this motion the state introduced E. L. Kistler, who testified: That he was one of the attorneys who represented appellant in the trial of this cause. That there was associated with him in the defense Mr. Leith, Col. Collier, and Mr. Grayson. That after the state introduced its evidence in this cause and the appellant had taken the witness stand, and when she was being subjected to cross-examination, appellant drew out a bottle from her pocket and apparently tried to swallow its contents. Thereupon court was adjourned. That this was about 11 o'clock in the morning. That when court convened in the afternoon Mr. Leith, Col. Collier, Mr. Grayson, and witness conversed with appellant in the judge's private chambers on the subject of withdrawing her plea of not guilty. That after the conference was over witness announced in open court before the judge that appellant desired to withdraw her plea of not guilty. Thereupon the court asked appellant if she desired to plead guilty. Appellant replied that she did. The court thereupon inquired of appellant whether she desired to waive time and be sentenced now. Mr. Leith requested that the matter be deferred to a later date. The court then stated that he would not discharge the jury until after he had sen-

tenced appellant. Col. Collier then stated, "Do it now and have it over with." Thereupon the court sentenced appellant. That another jury was out considering another case against appellant, wherein she was charged with forgery. That as soon as sentence was entered the judge discharged the other jury and dismissed that case, making an order barring it from further prosecution. That neither Col. Collier, Mr. Leith, Mr. Grayson or witness made any objection at the time when the court asked appellant what objection, if any, she had why sentence should not be pronounced upon her.

The court thereupon addressed the following questions to the witness:

"The Court: Q. There is one matter about which I want to inquire, Mr. Disney, that you will probably want to examine Mr. Kistler upon and about which you know nothing. It will save the necessity of my taking the witness stand in this case, I think. Q. Mr. Kistler, do you remember that it was something like 10 o'clock or after when Mrs. Hill, while being cross-examined by the county attorney, threw a bottle of morphine to her mouth that she had gotten out of her pocket? A. Yes, sir, I remember that. Q. You remember that bottle was afterwards examined, and that there was a paper wrapper over the top of it, and that none of it—so that none of it could get out? A. There was an oil paper in the neck of the bottle which extended about as far in the bottle as the cork went. None of the morphine had come out of the bottle. Q. It was either by her thrown to the floor or knocked out of her hands after having been thrown to her mouth? A. Yes, sir. Q. And when it was picked up it was still in the condition that you have described it? A. It was. Q. She went down then with the sheriff to the closet, and he come back in a few minutes and announced that she had taken something else—or her husband came back and announced that she had taken something in the closet?

"Mr. Leith: Judge, I do not want to object to everything.

"The Court: That is a matter about which there can be no dispute, and I just want to get it in the record.

"Mr. Leith: But I want to object to it as to what Mr. Hill should have said, not in the presence of the defendant.

"The Court: Objection overruled.

"Mr. Leith:    We except.

"A. Yes, sir.   Q. The court then called in the county physician and other physicians to examine Mrs. Hill with the view of determining whether or not she had taken poison? A. Yes, sir; that is a fact.   Q. The physicians, on account of the report about the powder, gave her something to counteract the effect of it if she had taken any?  A. Yes, sir.  Q. And then I made an order directing the sheriff to take her to the Turner Hotel and keep her there and let her rest until the afternoon session of the court?  A. Yes, sir; I heard the court give such an order or direction.  Q. I directed, I think it was Dr. Thompson, or the county physician, to go to the hotel and examine her and see whether or not she was in a condition to proceed with the trial in the afternoon, and also directed Mr. Leith to go to the hotel and tell her to quit her foolishness, and 'come on and let's proceed with the trial,' that she was only delaying it; I was going to keep the jury until she did recover?  A. I was not present at that time.  When I came to the courthouse my recollection is that Mr. Leith had gone some place, and I understood to the Turner Hotel.  Q. Col. Collier, Mr. Leith, Bob Grayson, and yourself went into my private office to consult about this case before she came up to the courthouse after dinner, didn't you?  A. Yes, sir; that is a fact.  Q. Do you remember calling me in and asking me— and telling me that you all had advised her, or at least you and Col. Collier, and I think Mr. Leith told me that he had advised her, that there was—which advice was given to her before the attempt to commit suicide, that she would unquestionably be convicted in this case?

"Mr. Leith: Now, if the court please, I hope the court will allow my objections to this.  I want to object to this because it is incompetent, irrelevant, and immaterial, because it is conversations had not in the presence or hearing of the defendant.

"The Court: Just getting at the good faith of this plea.

"Mr. Leith: I understand, your honor.  (Exception.)

"Q. Do you remember that?  A. Yes, sir; I recall that conversation.  Q. Do you remember then, Mr. Kistler, that you, I believe speaking for the rest of the attorneys as the spokesman of the attorneys there assembled, said that you had —that you all had decided to urge Mrs. Hill to enter a plea of guilty, withdraw her plea of not guilty, and asked me if in my judgment she could do that and have this Batt case dismissed

and be sentenced to seven years in this case, and then if she would tell the truth about all the other forgeries that she had been connected with, or of which she had knowledge, if I would be willing at the end of two years—or if you could say to her that you believed that at the end of two years that I would recommend her pardon or parole? A. Yes.

"Mr. Leith: Now, just wait, your honor, the objection is the same to that as stated to the last question.

"The Court: Objection overruled.

"Mr. Leith: Exception.

"A. Yes, Q. Do you remember that I told you that it was my—that I now feel like if she had pleaded guilty and will tell all that she knows and tell the entire truth about all of the transactions that she had been connected with—the other forgeries and all of which she had knowledge, that at the end of two years I would be willing to recommend her parole? A. That in substance; yes. Q. Do you remember I then left the court room and immediately returned and said to you gentlemen, 'I want to withdraw the statement that I have made'; that I would be inclined to recommend a parole at the end of two years, 'and I do not want you to hold out any promises to Mrs. Hill in the event she pleads guilty. I want it to be because she is guilty and without any promises, express or implied, from me with reference to recommending a parole or a pardon of her?' A. I do not recall that it was that direct and specific, but my recollection of it is that you stepped just outside of the room in which we were sitting, and then immediately stepped back into the room and said that you wanted to withdraw that statement, or something to that effect, and I do not recall what your other words were, but it was not nearly as lengthy as your honor has just stated. Q. It gave you the impression, it was in substance, though, that if she pleaded guilty at all I wanted her to plead guilty without any promises, express or implied, from me, that upon any consideration I would recommend a parole or pardon? A. Yes; that is the idea it conveyed to me, but taking into consideration the entire conversation I felt that it was like all of these other pleas of guilty where they turned state's evidence; where there is no direct promises there is an implied understanding that some immunity will be granted, and it is not put in a direct and specific language in order that it won't affect their testimony. Now, that is the idea that I had of the matter. Q. There never was any request, though,

for any recommendations until after the expiration of two years? A. No, sir. Q. That has not expired? A. No, sir. Q. And after she had returned you requested that she be brought into the office, that all of the attorneys might discuss the matter about which you had just been talking with her? A. Yes; in the presence of all. Q. After a conference with the attorneys she requested that I come into the room ·that she might talk to me—is that true, or at least that information was conveyed to me by you, I believe? A. The information was conveyed to you by me, I do not recall just exactly how that came up, though. Q. I went into the room anyway, having been requested to come in there by either Mrs. Hill or the attorneys? A. Yes, sir. Q. When I entered the room either you or Col. Collier said, 'Judge, Mrs. Hill wants to talk to you alone for a while,' and you all started out of the room, isn't that true? A. Yes; I recall now how that came about; how you happened to come in there; Col. Collier and Mrs. Hill and I were in the room and I had been reprimanding and criticising Mrs. Hill, and I even said to her that I was going in there and plead her guilty, and she says, 'You can't plead me guilty,' and I said, 'I will go in there and plead you guilty before that jury anyway.' Col. Collier suggested then that we call in the judge, and I believe that Mrs. Hill said that she wanted to talk with the judge herself— something like that—and I called you. Q. After Col. Collier —and then you called me into the room, is that what you started to say? A. I called you into the room and Col. Collier and I started out. Q. Mr. Leith was ahead of you going out, I think? A. I do not recall about that, he may have been. We all had been in there, and when we started out you said to me, 'Stay in here, Mr. Kistler, I want you to hear what is said.' Q. I said, ' I won't talk to Mrs. Hill alone?' A. Yes. Q. In the absence of her attorneys. That is the statement I made? A. Yes. Q. Mr. Kistler, do you remember the first thing that was said to me after I was seated in the room with you and Mrs. Hill was, 'Judge, do you think I am guilty?' And I said, 'Mrs. Hill, you are the only person who knows,' and then she began to discuss with me this case and other cases, and either you or she announced to me that she wanted to tell all she knew, and I said, 'Mrs. Hill, I do not want to receive from you any confession. I am not prosecuting attorney of this county; I am not authorized to prosecute any one. I do not want to hear any confession, and if you have any confession to make I suggest that you call in ·the county attorney and make

your confession to him, as he is the man who will have to prosecute upon any confession you make.' A. Those are almost the exact words as I recall them. Q. And then I further said to her, if you remember it, 'Mrs. Hill, if you do plead guilty I want you to do it of your own free will and accord, and you have a right to go ahead with the trial of this case, and if you are convicted, to appeal. I do not want you to plead guilty, nor I won't accept a plea from you of guilty, unless you are in fact guilty, and you are the only person who knows. We all may have our opinions about whether you are guilty or innocent, but you are the only party who knows, and before you plead guilty in my court, before I will accept a plea of guilty from you in my court, you must tell me that you enter it of your own free will and accord.' A. Yes, that is substantially the conversation. Q. And I further said to her in the room there that I had had a conference with the county attorney and with you gentlemen representing her, and the understanding was that if she did plead guilty the Batts case would be dismissed, and that she would be sentenced to seven years in the penitentiary upon a plea of guilty in this case? A. Yes. Q. Immediately after that we all came into the room and the further proceedings that have been related were had in the room here. This conference was had in my chamber? A. Yes, sir. Q. And the further proceedings were had in open court? A. That is correct. Q. The discussion of the plea of guilty was in my chambers because of the fact that the jury trying her case was assembled in this room? A. Yes, sir. Q. Do you remember when I asked her to stand up after you had said, 'May it please the court, the defendant at this time desires to withdraw her plea of not guilty and plead guilty,' that I ordered her to stand up? A. Yes. Q. I said, 'Mrs. Hill, do you at this time understand fully what you are doing, and the full consequences of your plea of guilty,' or words to that effect, and she seemed to weaken and sat down? A. Well, about that time I was noticing her; the defendant stood up and then kind of fell back in the chair, and I can't call in detail the conversations that took place at the time of these transactions. Q. You remember, though, at that time, when she sat down I called on Dr. Thompson, who had been treating her during the morning, and asked him if she was in a physical and mental condition to receive the sentence of the court? A. You asked that at some time, but I can't say at just what particular time. Q. And he reported that she was? A. He did. Q. And then you

remember I asked her, Mr. Kistler, if she desired to waive time and be sentenced now, and she nodded her head, and I said, 'Gentlemen, I don't know; I am inclined to think that this defendant is not a sick woman, but I am inclined to pass this sentence over for a few days,' and Mr. Leith says at the time, 'Judge, I think that it had better be done'—either that I said that or that she had a right to wait two days for the sentence of the court upon the plea, and Mr. Leith says, 'I think that had better be done,' and Col. Collier then in a hurried whispered conversation said to me, 'Judge, let's get it over with now.' Do you remember that? A. Judge, you have got so much of it there that I can't quite— Q. You, as one of the attorneys, understood at the time that she entered her plea that it was the agreement that I would then sentence her to seven years in the penitentiary, and that the preliminaries had been discussed with her in my chambers and the agreement made to plead her guilty and sentence her to seven years in the penitentiary? A. Yes.

"Mr. Leith: I want to object to that, may it please the court.

"The Court: Objection overruled.

"Mr. Leith: I want the court to allow me an objection and exceptions to all the evidence on that line without interrupting the court, if the court will allow it.

"The Court: All right, sir.

"Q. You had had a conversation with her and did not think she was in the mental condition that she did not understand what was going on, did you, Mr. Kistler?

"Mr. Leith: We want to object to that as a privileged communication.

"The Court: Objection overruled.

"Mr. Leith: Exception.

"A. At the time, had I not thought that she knew what she was doing, I would not have consented for the plea to go at that time. Q. You have had a large and extensive criminal practice Mr. Kistler, for the last ten years at least, haven't you? A. Well, what I consider a fair practice. Q. You, as her attorney, were advising her to take the steps that she did take, and to receive the sentence that was imposed, were you? A. Yes; I advised her to do that. Q. It was upon her own request that she was sentenced to seven years in the penitentiary,

wasn't it? A. Yes; now, I want to make a statement right there. I am placed in a rather embarrassing place in this, as a matter of fact—when we met here at 1:30 on that afternoon I was just about out of patience. Q. You was not so much so with your client that you wanted to plead her guilty, was you, and see her go to the penitentiary? A. Yes. Q. Regardless of whether she was guilty or innocent?

"Mr. Leith: I want to object to that question, may it please the court.

"The Court: Yes, I will strike it.

"Q. Mr. Kistler, from the beginning of this affair until the final sentence by the court, was any word said that could be inferred as an intimation upon the part of the court that he desired of this defendant a plea of guilty? A. No; there was not that I heard. Q. Do you now say that her plea of guilty was freely and voluntarily, and without any coercion or any intimidation on the part of the court? A. Yes. Q. Or on the part of the county attorney? A. Yes. Q. It came as a request from her that she be sentenced to seven years and that the other cases be dismissed? A. Yes. Q. No suggestion was made by any one that she was not in a mental condition to receive sentence, was there? A. There was not. Q. I asked her if she thoroughly understood what she was doing, didn't I? A. I can't say as to that. Q. I told her in my chambers that if she did plead guilty I wanted it to be upon the understanding that she was going to serve seven years in the penitentiary? A. Yes, you told me that. Q. She offered me no cause then in reply to that why I should not sentence her? A. She did not. Q. She didn't in the courtroom, did she? A. She did not. Q. I believe that is all. * * * Q. Mr. Kistler, I did not intend to ask you this question, but it has been brought out by the apparent answer that at least the deduction of it I think can be drawn from the answer that you did not believe she was in physical condition to receive the sentence. Isn't it a fact that on that date and after sentence that you told me that you did not believe she had taken a thing, and that she had just done that for the effect upon the jury; that she had just made that attempt to commit suicide for effect upon the jury? A. No; I do not recall that because we all know and saw from the bottle that she had not taken anything. Q. It was the general impression, not only of everybody else, but of the physi-

cians, that she had staged the affair for the effect it might have upon the jury, wasn't it?

"Mr. Leith: I want to object to that because it is incompetent, irrelevant, and immaterial, and calling for a conclusion of what other people thought.

"The Court: Objection overruled.

"A. Well, that was the general conversation. Q. Do you not want to be understood as saying in this record that you recommended and asked the court to sentence her seven years in the penitentiary when in fact you believed that she was not in physical and mental condition to receive that sentence, do you? A. I do not care what is understood or inferred; it does not make any difference to me.; the proposition is just simply this: I at the time, if I had not thought she was mentally capable of understanding and knowing what was going on, and what she was doing, why I would not have made that motion, as I stated a while ago; since that time, and after I have thought about the matter a great deal, I have regretted that I said the things to her that I did before she entered the plea, before she consented to plead guilty. Q. Really the object of the plea of guilty—the reason the plea of guilty was brought about— was because of the overwhelming testimony pointing to her guilt, wasn't it, and the fact that the attorneys all believed that they would not be able to get a verdict of not guilty at the hands of the jury then trying her?

"Mr. Leith: I object to that because it is incompetent, irrelevant, and immaterial.

"A. I was almost positive that there would not be a verdict of guilty. The venue in the case had not been clearly established, but the thing that moved me in doing and saying what I did was the attempted suicide on this witness stand. Q. Didn't you believe at that time that she would be convicted if left to the jury? A. No. Q. Didn't you so tell her the night before, and tell me that you had advised her that there was no possible chance to escape a verdict of guilty? A. Yes, sir; and I refused to let any witnesses go on the witness stand, and I told her in this room—Q. You did that because you told her that you would not argue perjured testimony to a jury, didn't you? A. Yes, sir. Q. Col. Collier told me, and one of the attorneys in this case, in your presence after dinner, and before the verdict of guilty—I mean before the attempt to

commit suicide in the morning—that he was opposed to putting any witnesses on the stand; that he had practiced law, I think he said, for more than 40 years honorably, had never put a witness on the stand when he was going to swear falsely, and he would not put the witnesses he had upon the stand and argue perjured testimony to the jury. A. The fact of the business is—

"Mr. Leith: I object to that. I want to state to the court here for the court's benefit that there was no offer by anybody to put any witnesses on the stand that she had. The attorneys absolutely contended all the time, and wanted to rest when the state rested, and not put even her on the stand.

"The Court: I asked Mr. Kistler if Col. Collier didn't say that.

"Mr. Leith: I want to object to that because it is incompetent, irrelevant, and immaterial as to what he said.

"The Court: Objection overruled.

"Q. (Question read.) A. Yes, Col. Collier said that, but I want to state to the court how it was. I told Mrs. Hill, and so did Mr. Leith, that she should not go on the witness stand, and she says: 'I am going on that witness stand; I must testify; I am going on the witness stand'—and I said: 'You are not going on it; if you go on that witness stand, I will go in there and plead you guilty, and I will plead you guilty before that jury,' and she said 'you could not plead me guilty,' and I said: ' I will plead you guilty before that jury, and then I would like to see what you would do,' and Col. Collier then insisted that she should go on the witness stand if she wanted to, and if the court will remember, I refused to examine her, and Col. Collier took the chair and examined her. Q. You did that because you had examined the deeds, the exhibits of the state in the case, and knew that they were traceries, didn't you?"

W. E. Disney testified for the state as follows:

"A. As I remember the occurrence of the plea of guilty of Mrs. Josephine Hill in No. 1,228, following the conference of the judge and counsel for the defendant with the defendant in the chambers of the court, they all immediately came into the courtroom and the defendant walked in, and the judge of the court immediately convened the court. and Mr. Kistler arose—the jury was not present; if I remember correctly, at

that particular time —and Mr. Kistler arose and announced that the defendant desired to withdraw her plea of not guilty and enter her plea of guilty, and the judge took his docket and began to write and to talk at the same time and entered his record, and ordered the defendant to stand up, and she did stand up, and I believe once was assisted to her feet by her husband and Mr. Selby, the deputy sheriff, and, apparently, at one time swooned away. The physician present, Dr. Claud Thompson, who had attended her for two or three hours, and who had given her an emetic following her feigned attempted suicide, was inquired of by the judge if she knew what she was doing—in almost that language—no, if she was in condition to know what she was doing and understood what she was doing, and the doctor's language, I believe almost verbatim, was this: 'Yes; she knows what she is doing, but she is a little nervous'—and following Mr. Kistler's statement that the defendant desired to withdraw her plea of not guilty and plead guilty, the judge asked almost in this language, as I recall it, 'Do you desire to waive time and be sentenced now?' and my memory is that Mr. Kistler said, 'Yes,' sorter in the way of his own, rather quietly, and turned around to the defendant, and, if I remember this correctly, made some suggestion to her to answer what the court asked of her. I believe that Mr. Kistler said, 'Yes,' that they did desire to waive time, and as he said about that time he was to a certain extent superseded, and Mr. Leith made a suggestion that we defer this matter, and that the judge of the court— I think then I objected to that procedure, and suggested to the judge of the court that this jury was out in this case and were waiting, and that the jury was deliberating on the Batts case out in the jury room, deliberating, and that would necessitate keeping two juries here and there was no use doing that, and then I think followed the conversation between the judge of the court and the physician, and then the sentence was pronounced, and then immediately the jury, in 1,237, the Batts case, was brought in here, and the court told them what had happened, and the defendant was present, the court told the jury that the defendant had just now pleaded guilty in the case on trial; that he was going to discharge them from further consideration of this case and they were discharged, and the record was entered up in the Batts case, No. 1,237, specifically ordering that this case be a bar—that this dismissal, which was then and there entered

up, be barred to a further prosecution of that case, and I want now to introduce in evidence the record in this case, the Batts case.

"The Court: Can it be agreed that the following is the record in that case entered by the judge and by the clerk at that time: '2—22—1913. Jury discharged. Cause dismissed on motion of county attorney on account of plea of guilty in No. 1,228, with bar to further prosecution.'

"Mr. Leith: Yes, sir.

"Mr. Disney: That record was entered after an agreement before the plea of guilty in 1,228 was entered, or at least was had between myself and the judge of this court and all of the attorneys for the defense, in which it was specifically agreed that if the defendant plead guilty in 1,228 that in number 1,237 the case should be dismissed, and the order made that it be a bar to a further prosecution, and it was upon that express condition that she had plead guilty in 1,228, that that record was made in 1,237.

"The Court: Mr. Disney, a good deal has been said here about asking her, three times before she answered, if she desired to withdraw her plea of not guilty and plead guilty; is it not a fact that the reason she did not answer the first two questions was on account of the answer of those questions by the attorney? A. My memory is this, your honor, that it was answered by Mr. Kistler—it might have been one of the other gentlemen for the defense—but it was answered by them, and that one or the other of them instructed her to answer the court's questions. I am about as positive as I can be that Mr. Kistler did answer that particular question. I know that I objected to the sentence being deferred on account of the expense of keeping two juries here when she was apparently in a physical and mental condition to receive the sentence. She walked into the courtroom and walked out of the courtroom, and walked from the Turner Hotel to the courtroom, a distance of at least a block, and after she was sentenced she walked to the sheriff's office, and from there to the jail, as I remember, and I think those are the facts, and whether or not it was necessary to sit down when the court was sentencing her or not I do not know. I think it was not any more necessary than the feigned attempt at suicide in the morning."

On pages 70 and 71 the following occurs:

"Mr. Disney: Your honor, I want to introduce Dr. Claud Thompson as a witness, but I can't get him here until 4:15 p. m.

"Mr. Leith: If the court please, what is the necessity? I can't see the relevancy of any of this testimony. The only proposition involved in this motion is as to whether or not the question was propounded to the defendant whether or not she had anything to say why the sentence of the law should not be passed upon her.

"The Court: They are not contending here that she was not in physical and mental condition to receive the sentence of the court.

"Mr. Disney: Do I understand that to be agreed?

"Mr. Leith: Yes, that is agreed.

"The Court: Let the record show that it is agreed that the question of her mental and physical condition at the time of being sentenced is not at issue upon this motion, and for that reason the request of the county attorney that the hearing be postponed until the physician can arrive is denied."

The court made a statement as follows:

"Gentlemen, upon this motion, while it may be true, I do not remember now whether or not in language—I am inclined to think I did not in language say to this defendant, 'Have you any reason now to offer why the judgment of the court should not be pronounced against you?' Yet in view of the conferences in chambers in the absence of the jury in regarding the plea of guilty concerning the plea of guilty, the fact that it was agreed and understood in there, and before I came upon the bench to formally pronounce the sentence, that she was to plead guilty and receive a sentence of seven years, and that the court was to dismiss the case No. 1,237, the fact that she was asked here, as I think is shown overwhelmingly by this testimony, and which is a fact, that the court desired to know whether or not she wanted to waive time, and whether or not she requested immediate sentence, to which she replied in the affirmative, is and amounts to the same at least as a direct statement or question, 'Have you any reason to offer why the judgment of the court should not be pronounced against you?' It amounts to the same; it is in substance the same. I do not think any defendant was ever dealt with

more fairly than this defendant was dealt with in receiving from her a plea of guilty, and for this reason the motion will be overruled."

*M. L. Leith, E. L. Kistler,* and *Fred L. Zick,* and *McAdams & Haskell,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, J. (after stating the facts as above). Without intending to be in the least disrespectful to counsel for appellant, we are of the opinion that this appeal is absolutely without merit, and that the action of the trial judge should be in all things approved.

As an act of justice to the trial court we have prepared an elaborate statement of what occurred when the motion to set aside the judgment was submitted. While it is true a defendant has the right before sentence is pronounced to give any reasons which he or his counsel may have as to why sentence should not be pronounced against him, yet a defendant in a criminal case may waive any right, not inalienable, given him by the statute or the Constitution, where it can be relinquished without affecting the rights of others, and without detriment to the community at large, and such waiver may be made either by express agreement or by conduct, or by a failure to insist upon the right in seasonable time. *Scribner v. State, ante,* 132 Pac. 933; *State v. Frisbee,* 8 Okla. Cr. 406, 127 Pac. 1091.

The record shows conclusively that immediately after the plea of guilty was entered the court doubtless through want of confidence in the good faith of appellant, asked the appellant in the presence of her counsel if she desired to waive delay and receive immediate sentence, and one of her counsel asked that the court sentence the defendant at once and have the matter gotten through with. To this appellant assented. It is therefore too late now to object that appellant was not asked what reasons, if any, she had to give why sentence should not be pronounced upon her. The answers made by

appellant and her said counsel were equivalent to saying to the court, "We have no reasons to give why sentence should not be pronounced."

Counsel for appellant are not in a position to say that appellant was not in a proper mental condition to receive sentence at the time. The record shows the following:

"Mr. Disney: Your honor, I want to introduce Dr. Claud Thompson as a witness, but I can't get him here until 4:15 p. m. Mr. Leith: If the court please, what is the necessity? I can't see the relevancy of any of this testimony. The only proposition involved in this motion is as to whether or not the question propounded to the defendant whether or not she had anything to say why the sentence of the law should not be passed upon her. The Court: They are not contending here that she was not in physical and mental condition to receive the sentence of the court. Mr. Disney: Do I understand that to be agreed? Mr. Leith: Yes; that is agreed. The Court: Let the record show that it is agreed that the question of her mental and physical condition at the time of being sentenced is not at issue upon this motion, and for that reason the request of the county attorney that the hearing be postponed until the physician can arrive is denied."

Further comment is unnecessary. We find no errors in the record. The judgment of the lower court is in all things affirmed.

ARMSTRONG, P. J., and DOYLE, J., concur.