In re Application of Richard Dean POSTON, for Writ of Habeas Corpus.

No. A–12135.

Criminal Court of Appeals of Oklahoma.

March 16, 1955.

778

Lassiter, Linker & Mason, Tulsa, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Owen J. Watts, Asst. Attys. Gen., for respondent.

POWELL, Judge.

Petitioner, Richard Dean Poston, seeks his release from the Oklahoma State Penitentiary, where he is serving a sentenc of 30 years on account of a judgment entered by the district court of Tulsa County on the 7th day of December, 1951 by reason of the petitioner entering a plea of guilty in case No. 14910 in that court, to a charge of rape in the first degree allegedly committed on the 7th day of September, 1951.

Petitioner heretofore and on March 23, 1954 in case No. A–12074 in this court, sought the relief at this time applied for, but a hearing on that petition was continued a number of times at the request of counsel for the defendant, and finally on June 9, 1954 at the request of counsel for petitioner, the proceedings were terminated by dismissal. The present proceedings were commenced on October 19, 1954.

The basis for relief as stated by counsel is:

"That said petitioner is being held illegally and unlawfully, and that such restraint is unauthorized, for the reason that the said court in Tulsa County, Oklahoma, did not have jurisdiction of the person of this petitioner, or the subject matter, nor did any integral part of said crime happen within the boundaries of Tulsa, Oklahoma, giving the court jurisdiction, and that the judge of said court was without authority to restrain and incarcerate this petitioner in the State Penitentiary at McAlester, Oklahoma."

If petitioner is correct in his contention that the sentencing court did not have or

obtain jurisdiction of the defendant or the subject matter, then he would be entitled to his discharge, and by reason of more than three years having elapsed at this time since the date the offense was alleged to have been committed, further prosecution would be barred by the applicable statute of limitations. Tit. 22 O.S.1951 § 152.

Counsel in brief in support of the petition asserts that the information shows on its face that the crime charged was alleged to have been committed in Wagoner County, and that it was never contended otherwise, and hence the court was without jurisdiction to render the judgment entered. It is further asserted: " * * * the crime of rape with force and violence is that type of an offense, particularly under the evidence in this case, that could not have occurred in both counties to give either county jurisdiction."

It is stated that defendant was represented by the public defender of Tulsa County, and entered a plea of guilty. It is stated that the evidence of the prosecutrix at the preliminary showed that the actual rape took place in Wagoner County. Counsel for petitioner then delineates the following in the form of a summary of the testimony of the prosecutrix at the preliminary hearing:

"Geneva Daugherty lived at 215 S. Evanston Street, Tulsa, Oklahoma. She was a woman between 40 and 44 years of age; that she was the night janitress in the Mayo Building in Tulsa, Oklahoma; that on the night in question she quit work at 6 minutes until 12:00 o'clock. She caught a city bus and alighted therefrom at Admiral and College Streets, walked a couple of blocks to First and Evanston Streets, where the defendant in an automobile accosted her. He put his hand over her mouth and told her not to scream. She and the defendant began fighting and the defendant struck her. When she came to they were traveling in the car on some street which she did not know but she saw lights coming in the distance. She then grabbed the steering wheel and tried to wreck the car. She then threw out her purse and tried to jump from the car. At this point the prosecuting witness became unconscious again after the defendant struck her. She then came to again, but every time she came to the defendant would beat her and she would pass out again. That they were driving out on the highway and the last time she came to the car was parked on the highway, she knew not where; that the defendant there got up over her and was right on top of her. He asked her to kiss him, which she refused. The defendant started beating her and she passed out again; that when she came to again she was in a ditch and it was very dark. She made it to a farm house and was later brought home. The facts further are that the defendant was 34 years of age, was employed by the Bell Telephone Company at Tulsa, and that he had never before been convicted or charged with any felony or any serious offense. He was arrested at his home three or four days after the offense was committed. He was carried in a Tulsa police car into Wagoner county and there pointed out the scene of the offense to the police officers."

The State in connection with a response has filed an exhibit consisting of a copy of a confession made by the defendant wherein he confessed to forcibly placing the prosecutrix in his car, beating her and leaving her in a ditch. The medical record shows that it was necessary to take stitches in her lips, and that her skull was fractured from the beatings, and a vaginal examination disclosed numerous "motile sperm". It is set out that the point shown the officers where the rape actually took place was across the Tulsa County line in Wagoner County.

The pertinent portion of the information in the case charged:

" * * * that Richard Dean Poston, on the 7th day of September, A. D. 1951, in Tulsa County, State of Oklahoma, and within the jurisdiction of this Court, did unlawfully, wilfully, forcibly and feloniously strike, beat and seize Geneva Daugherty, a female person, not the wife of him, the said Rich-

ard Dean Poston, and after crossing the county line of Tulsa County into Wagoner County, Oklahoma, did carnally know and have sexual intercourse with the said Geneva Daugherty, and that the said defendant by means of force and violence and fear, did overcome all resistance on the part of her the said Geneva Daugherty, and that Geneva Daugherty resisted the said Richard Dean Poston, but her resistance was overcome by force and violence, contrary to the form of the Statutes * * *."

██ ██ It is apparent, as contended by counsel for the petitioner, that the prosecution was carried on in Tulsa County by the Tulsa County Attorney in the belief that the same was authorized by Tit. 22 O.S. 1951, § 124, reading as follows:

"When a public offense is committed, partly in one county and partly in another county, or the acts or effects thereof, constituting or requisite to the offense, occur in two or more counties, the jurisdiction is in either county."

If it was proper that the prosecution be instituted under such statute, we would in a habeas corpus proceeding assume that the court had before it evidence or a stipulation that would meet the requirements of the statute. Only where the case would reach this court on appeal and where it was properly incorporated in the casemade would we consider the evidence produced at the preliminary hearing making up the proof supporting the charge. In re McNaught, 1 Okl.Cr. 528, 99 P. 241; Ex parte Dunn, 33 Okl.Cr. 190, 242 P. 574; Ex parte Jackson, 45 Okl.Cr. 448, 287 P. 786; Thornton v. Waters, 95 Okl.Cr. 306, 245 P.2d 95. But if petitioner is correct in his contentions hereinabove quoted, then the information which stands or falls by its very wording is all that we may consider.

Confining ourselves, then, to the wording of the information, we are impressed by the argument in petitioner's brief, where it is said:

"We earnestly insist that the element of striking and beating the prosecutrix in Tulsa County, is merely an incident to the leaving of Tulsa County and going to Wagoner County and as it appears in the information, is not a necessary element which goes to make up the offense of rape. To support same we refer the court to 14 American Jurisprudence, Section 226, in which it is said: 'It is necessary, however, to discriminate with great care between acts essential to the crime and acts merely incidental thereto.' The following section, namely 227, which delves upon the act which is commenced in one state and completed in another, it is said: 'In other words, a criminal act begun in one state and completed in another renders the person who does the act liable in the state where the crime was completed.'"

Illustrative of where the offense charged was partially committed or acts constituting the offense occurred in two or more counties, and where this court held that prosecution therefor might be had in either county, see Troup v. State, 51 Okl.Cr. 438, 2 P.2d 591, and cases cited. In the Troup case there was a prosecution for obtaining money or property under false pretense, and the evidence disclosed that the false representations were made in Muskogee County, and the payments made in other counties, and it was held that the venue was in either county.

Illustrative of where the above statute was held not to apply is the case of Richardson v. State, 61 Okl.Cr. 278, 67 P.2d 804, cited by petitioner. It was there held that where a defendant got in an automobile and pointed his pistol at the driver in one county but did not take the automobile until they reached another county, prosecution for robbery with firearms was properly laid in the second county.

Petitioner also cites Perry v. State, 61 Okl.Cr. 46, 65 P.2d 543. In that case the evidence established that the defendants herded up some cattle, not their property, on the Ft. Sill Military Reservation in Comanche County, then drove the cattle off the reservation in Comanche County and there loaded the stolen cattle in a truck and drove them to market in Oklahoma City. As against the contention that the venue

was in the Federal Court, this court held that venue was in Comanche County. Such holding, however, does not mean that if the case had been filed in the Federal court that such court might not have found the prosecution could have been maintained in that court.

In the case of Ex parte Lucas, 33 Okl.Cr. 407, 243 P. 990, the petitioner sold poisoned liquor in Beckham County to A, who sold one-half gallon to B and C, his companions at the time of purchase from A; that A, B and C then took the half gallon of liquor into Washita County and with a number of other parties engaged in an orgy of drinking, and one of the drinkers, we will call D, died from the drinking in Washita County. The petitioner who originally sold the liquor to A in Beckham County was charged with murder in Washita County, and confined to jail there. This court granted the writ of habeas corpus, stating:

"Where a criminal act and its objects and purposes are fully completed in one county [the selling of the poisonous whiskey] the fact that an indirect injury flowing therefrom occurred in another county will not of itself invest the courts of the latter county with jurisdiction to try the offense."

It was said in the body of the opinion:

"The young man who died did not procure the whisky from the petitioner. It was given to him by his companions in another county. Now, if one of the young men to whom the liquor was sold had suffered death in an adjoining county, the petitioner might be amenable to prosecution in either county, under the terms of section 2429, Comp.Stat.1921 [Tit. 22 O.S.1951 § 124]."

In 22 C.J.S., Criminal Law, § 177, it is said:

"Such statutes are remedial and are to be liberally construed, so as to effectuate the purpose to extend the lines of jurisdiction beyond the limits prescribed by the common law; but such a statute does not apply where the crime is complete in one county, and a single, indivisible offense, not consisting of several parts, is not within the operation of the statute. Before it can become operative in any criminal case, one of two things must appear: Either the offense must be divisible, and each part must be unlawful in and of itself, and committed at a different time and place, or it must consist of more than one act, each of which acts, or the effect of each, must constitute an unlawful element of the offense, without the presence of which the offense could not be consummated."

█ █ In view of the fact that in the information in the within case it is alleged that the raping of the female person took place in Wagoner County, the fact that her resistance was alleged to have been overcome by means of force, violence and fear in Tulsa County, prior to the rape in Wagoner County could not bring the offense within the terms of Section 124 of Title 22 O.S.1951, because the completed sexual act is alleged to have taken place in Wagoner County. And in that no part of the act of intercourse was alleged to have taken place in Tulsa County (as where the acts might have taken place right on the county line, Section 125 of the above Title) the distance from the Tulsa County line into Wagoner County could have no bearing. And this for the reason that that part of Section 125 of Title 22 O.S.1951 providing that where a public offense is consummated within 500 yards of a county line, the jurisdiction is in either county has been held unconstitutional and in conflict with the first clause of Art. II, § 20 of the Oklahoma Constitution now italicized in quoting the entire section of Article II, as follows:

"*In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed:* Provided, that the venue may be changed to some other county of the State, on the application of the accused, in such manner as may be prescribed by law. He shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have com-

pulsory process for obtaining witnesses in his behalf. He shall have the right to be heard by himself and counsel, and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their post-office addresses."

See Smith v. State, 18 Okl.Cr. 603, 197 P. 712.

We do not mean to say that one act of rape could not be committed in two counties, or even more, as where the counties were closely cornered and a portion of all were traversed by the same highway and where the rapist and his female victim would be in a motor vehicle driven by a third person, and the sexual act would continue as the vehicle was driven into the second or more counties. But no such allegations are set out in the within information. The beating and threats that are alleged to have occurred in Tulsa County added to the force exerted in Wagoner County no doubt enabled the rapist to finally accomplish the ravishment of the victim, though the rapist could have abandoned the idea of rape, if it existed, and no one would contend that the facts under such circumstances would have supported a charge of attempt to rape. We conclude from the information that the sexual act was actually commenced and completed in Wagoner County. Tit. 22 O.S.1951, § 124. And as bearing on the thought expressed, and for possibly a better appreciation, see: Tit. 21 O.S.1951 § 1113; Dubois v. State, 22 Okl. Cr. 308, 210 P. 1043; Beasley v. State, 94 Okl.Cr. 353, 236 P.2d 263; State v. Pollock, 57 Ariz. 415, 114 P.2d 249.

The conclusion that we have reached that the information involved herein discloses on its face that the proper venue of the crime charged was in Wagoner County, rather than Tulsa County, fails to dispose of all questions presented by the information, judgment and record properly before us. That is to say, the record shows that the petitioner here was represented by counsel in the trial court, and counsel admits

that the petitioner was accorded a preliminary hearing. The case from the allegations in the information standing alone and without a consideration of the evidence at the preliminary not properly before us, discloses an aggravated and most atrocious crime where the death penalty might have properly been assessed on conviction. Tit. 21 O.S.1951 § 1115.

For some reason, sufficient unto the petitioner, he decided to waive trial by jury and enter a plea of guilty. Evidently his attorney had explored the possible recommendations of the county attorney in such case, and decided such a plea would be to his client's advantage. At all events, the court assessed a very light punishment, where cases with such aggravated circumstances usually result in a life sentence at least. See Henderson v. State, 94 Okl.Cr. 45, 230 P.2d 495, 23 A.L.R.2d 1292, where the circumstances were not as intense as here and where the death penalty was assessed but this court by reason of various cricumstances reduced the punishment to 150 years in the penitentiary. Is it not apparent that the defendant felt that it was to his advantage to waive a trial by jury, which constitutional right he could waive? Foster v. State, Okl.Cr., 259 P.2d 542.

Could he not, and did he not, at the same time waive his right to be tried in Wagoner County? That is the vital question now presented. We cannot find where this court has ever had before it a case involving an information as here, or where it has declared whether an accused could or could not waive venue.

The above constitutional provision does specifically provide "that the venue may be changed to some other county of the State, on the application of the accused in such manner as may be prescribed by law." And an accused by obtaining a change of venue would of course thereby waive his right to be tried in the county where the crime was alleged to have been committed. It could not be reasonably contended but that the right to be tried in the county where one was accused of committing a crime rather than in some other county in a court having jurisdiction of the subject matter, was any-

thing but a personal right. And this court has uniformly held that an accused's constitutional rights in the nature of personal rights for his benefit may be waived by him. Miles v. State, Okl.Cr., 268 P.2d 290.

Supporting the idea that the right in question is a personal one, an illustration of comparable rights held subject to waiver may be found set forth in clear language in paragraphs 3 and 4 of the syllabus by this court in Ex parte Gault, 78 Okl.Cr. 172, 146 P.2d 133:

"3. The constitutional provisions guaranteeing to the accused in every criminal action certain rights are: First, those in which the public generally, and as a community, is interested, as well as the accused, and which are jurisdictional as affecting the power of the court to try the cause; second, those more in the nature of privileges which are for the benefit of the accused alone, and do not affect the general public. The former may not be waived, the latter may.

"4. The right to have twenty-four hours in which to plead after arraignment, the right to be furnished with a copy of the information, the right to two days after conviction before sentence may be passed, the right to be confronted by the witnesses, the right to trial by jury, the right to have counsel to represent him, and the right to a subpoena for his witnesses, are some of the privileges for the benefit of an accused which may be waived by him."

And in other cases in unmistakable language this court has said that a defendant in a criminal case may waive any right, not inalienable, given him by the statute or the Constitution, which can be relinquished without affecting the rights of others, and without detriment to the community at large; and such waiver may be made either by express agreement or by conduct, or by a failure to insist upon the right in seasonable time. Hill v. State, 9 Okl.Cr. 629, 132 P. 950; Whitfield v. State, 45 Okl.Cr. 397, 283 P. 266; Martin v. State, 92 Okl.Cr. 182, 222 P.2d 534; Hobson v. State, Okl.Cr., 277 P.2d 695. A case from this court involving waiver, while not in point is of interest: Ex parte Wallace, 81 Okl.Cr. 176, 162 P.2d 205.

In many states, including Indiana, the above rule in essence has been adopted in the form of legislation, but of course if such a rule was unconstitutional the fact that it was one by the court or one in the form of legislative act would have no bearing in the determination of the constitutionality of such proviso.

The question under consideration has been squarely passed on by many other courts with constitutional provisions similar in wording to ours. The Colorado constitutional provision, Art. II, § 16, Colo.Const., is similar to our constitutional provision. The Supreme Court of Colorado in Davis v. People, 83 Colo. 295, 264 P. 658, 659, with reference to the provision in question, said:

"This provision, however, is solely for the benefit of the accused. It involves no question of public policy, and defendant could waive it at his pleasure. If this were not true, no change of venue could be allowed a defendant in a criminal case. On that theory only are the statutes supporting such changes upheld. State ex rel. Scott v. Crinklaw, 40 Neb. 759, 764, 59 N.W. 370; Bish.Crim.Pro. 50.

"In the instant case defendant was specifically advised by the recitals of the information that he was being tried in Denver for a crime alleged to have been committed in LaPlata County. If he did not desire to waive his constitutional right, he was in duty bound to protest when he knew that right was being violated. Having entered his plea and gone to trial, and reserved his protest until the people rested, he was too late. He had waived his right as irrevocably as if by express words. Magee v. People, 79 Colo. 328, 333, 245 P. 708; Ex parte Mote, 98 Kan. 804, 160 P. 223; State v. Browning, 70 S.C. 466, 50 S.E. 185; People v. Fontuccio, 73 Colo. 288, 290, 215 P. 145."

The rule is stated in 14 American Jurisprudence, § 233, p. 930, as follows:

"Constitutional right to be tried in the county in which an offense is committed is a personal privilege which may be waived."

See also to the same effect Vol. 1, Bishop's New Criminal Procedure, 2d Ed., p. 24.

And in 22 C.J.S., Criminal Law, § 176, page 267, it is said:

"The right which the constitution gives to an accused to be tried in the county in which the offense was committed or his right to object to the locality of the trial generally is a personal privilege and may be waived by him."

A leading case where the question here raised, and where the essential facts were quite similar to the facts in the within case is that of Brown v. State, 219 Ind. 251, 37 N.E.2d 73, 137 A.L.R. 679, which is meticulously annotated, including editorial notes stating the minority view. We believe the reasoning in that case sound and in harmony with the general principles long approved by this court and hereinabove noted.

Concededly, a judgment of a trial court which acted without jurisdiction would be void. Generally such statement refers to general jurisdiction over the subject matter of the action. The district courts of Oklahoma are courts of general jurisdiction, and "have original jurisdiction in all cases, civil and criminal, except where exclusive jurisdiction is by this constitution, or law, conferred on some other court," etc. District courts do not have original jurisdiction in misdemeanor cases, or probate cases; and for example county courts do not have jurisdiction of felony cases, or divorce cases; and where the litigants have not been residents of the State for the prescribed time the parties cannot confer jurisdiction on the court by waiver. Beach v. Beach, 4 Okl. 359, 46 P. 514.

This type of jurisdiction is fixed by the Constitution or statute and is not a matter between the parties, but a public matter, and cannot be waived.

Perhaps many times there is confusion in the use of the term "venue" and the term "jurisdiction". We are impressed by the reasoning of the court in Brown v. State, supra [219 Ind. 251, 37 N.E.2d 78], where in the body of the opinion it is said:

"In speaking of the venue of an action or the place of trial, courts often speak of the jurisdiction of the court to try the case. In so using the word 'jurisdiction' in connection with the matter of place of trial or venue the courts are speaking of the jurisdiction of the particular case and not of the jurisdiction of the subject matter. 'The word "venue," unless it is given jurisdictional effect by localizing the action, relates only to the place where or the territory within which either party may require the case to be tried, and unless it is a localized action, the question of jurisdiction of subject matter is not involved.' 21 C.J.S., Courts, § 15, p[age] 33.

"In Commercial Casualty Insurance Co. v. Consolidated Stone Co., 1929, 278 U.S. 177, 49 S.Ct. 98, 99, 73 L.Ed. 252, it was apparent on the face of the petition that jurisdiction was grounded solely on diversity of citizenship and that the suit was brought in a district in which neither party resided. It was there held that a party failing to object until after judgment had waived his right to object, the court saying: 'The Ohio practice statute prescribes that all objections thus appearing when so neglected shall be deemed to have been waived, "except only that the court has no jurisdiction of the subject-(matter) of the action and that the petition does not state facts which show a cause of action." Ohio Gen.Code, § 11311.

" 'Here the objection was not that the court was without jurisdiction of the subject-matter of the suit, but that the suit was not brought in the district of the residence of either party—a waivable matter of venue only.

" 'Our conclusion is that the objection was not seasonably made and

that under our decisions, as
Ohio statute, it was waived.'

instant case the appellant was
f the crime of first degree
rape, an offense against the laws of the
State of Indiana. The Wayne Circuit
Court had general jurisdiction of the
subject-matter, the jurisdiction to try
such criminal actions. The only question raised by appellant was as to the right of the Wayne Circuit Court to try this particular action when it was alleged that the offense was committed in the adjoining county. Appellant's only question is as to which of two courts of general jurisdiction should try the case. This question does not involve the jurisdiction of the subject matter, but only the place of the trial, a question of venue. The right to have the case tried in a certain county, as guaranteed by the constitution and statute, was a right personal to the appellant, which he could waive and which, pursuant to the provisions of § 2–1011 Burns' 1933, § 115, Baldwin's

1934, he is deemed to have waived by not having made an appropriate objection in the trial court."

See also Gowling v. U. S., 6 Cir., 64 F.2d 796; State v. Edwards, 151 Kan. 365, 99 P.2d 836; State ex rel. Lea v. Brown, 166 Tenn. 669, 64 S.W.2d 841, 91 A.L.R. 1246, certiorari denied 292 U.S. 638, 54 S.Ct. 717, 78 L.Ed. 1491; Green v. State, 230 Ind. 400, 103 N.E.2d 429; State v. Hardoman, 29 Wash.2d 182, 186 P.2d 634; Lii v. U. S., 9 Cir., 198 F.2d 109.

By reason of the foregoing, we hold that the attempt by petitioner to obtain his release by writ of habeas corpus from the State Penitentiary on the ground that the district court of Tulsa County did not have territorial jurisdiction of the crime for which defendant was found guilty and sentenced, a question not raised in the trial court, was thereby waived, and the petition for writ of habeas corpus is therefore denied.

JONES, P. J., and BRETT, J., concur.