OSCN Found Document:DEO v. PARISH

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 DEO v. PARISH
2023 OK CR 20
Case Number: MA-2022-937
Decided: 12/14/2023
BILLY ZANE DEO, Petitioner v. THE HONORABLE LAWRENCE PARISH, Respondent.

Cite as: 2023 OK CR 20, __ __

 

BILLY ZANE DEO, Petitioner v. THE HONORABLE LAWRENCE PARISH, DISTRICT JUDGE OF OKFUSKEE COUNTY, TWENTY-FOURTH JUDICIAL DISTRICT, Respondent.

O P I N I O N
MUSSEMAN, JUDGE:
¶1 Petitioner, through counsel Curt Allen, petitions this Court for an extraordinary writ compelling the dismissal of Okfuskee County District Court Case Nos. CF-2018-56 and CF-2018-104 based on a lack of jurisdiction pursuant to McGirt v. Oklahoma, 591 U.S. __, 140 S.Ct. 2452 (2020). For the reasons discussed below, the writ is DENIED.

PROCEDURAL HISTORY
¶2 On August 15, 2018, Petitioner entered a guilty plea to Second Degree Burglary in Case No. CF-2018-56 and the trial court entered an order deferring his sentencing for seven years. On December 17, 2018, Petitioner was charged with Grand Larceny and Knowingly Concealing Stolen Property in Case No. CF-2018-104. On December 19, 2018, the State filed an application to accelerate Petitioner's deferred sentencing in Case No. CF-2018-56. Pursuant to a drug court plea agreement, Petitioner entered a plea of guilty in Case No. CF-2018-104, stipulated to the application to accelerate in Case No. CF-2018-56, and was admitted to drug court in January of 2019. The trial court delayed sentencing in both cases pending the outcome of Petitioner's participation in drug court.
¶3 On February 27, 2019, the State filed an application to terminate Petitioner's participation in drug court that has not been ruled upon. On August 31, 2022, Petitioner, through counsel Curt Allen, filed a motion to dismiss for lack of subject matter jurisdiction in the trial court.
[1] After a hearing on the matter, Judge Parish denied Petitioner's motion to dismiss in an order filed in the trial court September 26, 2022. It is from that order that Petitioner seeks extraordinary relief.
ANALYSIS
¶4 To receive extraordinary relief via a writ of mandamus, Petitioner must establish that "(1) he has a clear legal right to the relief sought; (2) the respondent's refusal to perform a plain legal duty not involving the exercise of discretion; and (3) the adequacy of mandamus and the inadequacy of other relief." Rule 10.6(B), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2023). Two shortcomings present themselves in Petitioner's attempt to meet his burden of proof on the first and second element. First, in showing that he has a clear legal right. Specifically, has Petitioner either waived or forfeited this right, or that the right goes to the subject matter jurisdiction of the trial court and can be raised at any time. Second, in demonstrating that his clear legal right actually applies to his case, meaning it works to preempt the trial court's jurisdiction and triggers a plain legal duty in the trial judge to dismiss Petitioner's case. Ultimately, the petition for a writ of mandamus fails on both.
¶5 Petitioner failed to raise his claim that the trial court lacks subject matter jurisdiction prior to entering his pleas. However, this Court has held that subject matter jurisdiction cannot be waived and can be raised at any time. Cox v. State, 2006 OK CR 51, ¶ 8, 152 P.3d 244, 248, overruled on other grounds by State v. Vincent, 2016 OK CR 7, ¶ 12, 371 P.3d 1127, 1130.
¶6 The question of our district courts' criminal subject matter jurisdiction was largely unimportant, a curiosity that was rarely, if ever, substantively dispositive prior to McGirt and especially after the lower courts were unified into one district court.
[2] However, it is now critically important that this Court analyze the question. Ultimately, in reviewing this Court's precedent, other courts' reasoning on similar issues, and the United States Supreme Court's treatment of jurisdiction in Indian Country, this Court is no longer satisfied that Oklahoma district courts' subject matter jurisdiction is implicated in the preemption analysis.
¶7 First, this Court must properly define subject matter jurisdiction. Jurisdiction is a word of many meanings and is often confused and misused. United States v. Tony, 637 F.3d 1153, 1157 (10th Cir.2011) (citing Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 90 (1998)). In Tony, the Tenth Circuit considered if an Indian defendant whose crimes qualified under the Indian Major Crimes Act,
[3] but for the fact that they did not occur in Indian Country, divested the federal district court of subject matter jurisdiction. Id. at 1158. The Tenth Circuit found the question of the federal district court's criminal subject matter jurisdiction to begin and end with § 3231, which states that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. The Tenth Circuit ultimately found that "[t]he Indian Country nexus, like other similar nexuses in the context of federal crimes, has been called a 'jurisdictional element' but it is 'jurisdictional' only in the shorthand sense that without that nexus, there can be no federal crime." Tony, 637 F.3d at 1158-59 (quoting United States v. Martin, 147 F.3d 529, 531-32 (7th Cir.1998) and citing United States v. Prentiss, 256 F.3d 971, 981 (10th Cir.2001)) (internal quotations omitted).
¶8 Oklahoma has also defined the breadth of its district courts' subject matter jurisdiction broadly. "The District Court shall have unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article." Okla. Const. art. VII, § 7. This Court has said that "[s]ubject matter jurisdiction, cannot be waived to confer jurisdiction on a court lacking the power to adjudicate a particular type of controversy." Cox, 2006 OK CR 51, ¶ 8, 152 P.3d at 248 (emphasis added). "If the type of controversy at issue is within a court's subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction." Id. (emphasis added) (internal quotations omitted).
¶9 This Court addressed Oklahoma courts' subject matter jurisdiction in Indian Country in Ex parte Wallace, 1945 OK CR 92, 81 Okl.Cr. 176, 162 P.2d 205. In Wallace, this Court was faced with a writ of habeas corpus alleging, for the first time after a plea of guilty, that the petitioner was an Indian, that his crime was committed in Indian Country, and that the district court did not have jurisdiction. Id. This Court held relief was not warranted. Id. After describing the facts and procedural history of the case, the Court noted that writs of habeas corpus were not designed to interfere with the courts where they had general jurisdiction of the subject matter and person. Id. 81 Okl.Cr. at 184, 162 P.2d at 209.
The Court then described subject matter jurisdiction as
the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the general power vested in the court, by the law of its organization, to deal with the abstract question. Nor is this jurisdiction limited to making correct decisions. It empowers the court to determine every issue within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong, and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error or appeal, or impeached for fraud.

Id. 81 Okl.Cr. at 187, 162 P.2d at 210 (citing Foltz v. St. Louis & S.F.R. Co., 60 F. 316, [317-18] (8th Cir. 1894)). This Court ultimately found that the district court had "jurisdiction of the subject matter, to-wit, rape in the first degree" and held relief was not warranted since the petitioner did not preserve the issue and raise it on direct appeal. Id. 81 Okl.Cr. at 188, 162 P.2d at 211. Ultimately, subject matter jurisdiction considers the type of controversy before the district court.
¶10 This is consistent with the United States Supreme Court's holding in Castro-Huerta
[4] where it held that "Indian country is part of the State, not separate from the State. . . . [F]ederal law may preempt that state jurisdiction in certain circumstances. But otherwise, as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country." Id. at 2493. As a result, we must now look at whether federal preemption acts on Oklahoma district courts' subject matter jurisdiction, or something else. The Supreme Court identified two types of preemption in these cases, ordinary federal preemption through a statute, or if the exercise of state jurisdiction would unlawfully infringe upon tribal self-government under the Bracker[5] balancing test. Id. at 2500-01.
¶11 In reviewing this Court's jurisprudence regarding Oklahoma district courts' subject matter jurisdiction being preempted in Indian Country, the first time the two are linked is in Magnan v. State, 2009 OK CR 16, ¶ 9, 207 P.3d 397, 402, where this Court held that such a claim alleged that the district court lacked the power to adjudicate a charge against the defendant. This Court then cited two cases for support of that proposition: Forester v. State, 1927 OK CR 33, 36 Okl.Cr. 111, 252 P. 861, 864, and Armstrong v. State, 1926 OK CR 259, 35 Okl.Cr. 116, 248 P. 877, 878. However, Forester and Armstrong merely restated the rule that subject matter jurisdiction cannot be waived and neither involve Oklahoma district courts' subject matter jurisdiction in Indian Country. Furthermore, there is no analysis or reasoning as to why the court's subject matter jurisdiction is implicated rather than one of the many other meanings of jurisdiction, especially territorial and personal.
¶12 This Court is no longer convinced that Congress has preempted Oklahoma State Courts' subject matter jurisdiction.
[6] The Supreme Court even identified the question in Castro-Huerta as whether "the State's authority to prosecute crimes committed by non-Indians against Indians in Indian country has been preempted." Castro-Huerta, 597 U.S. __, 142 S.Ct. at 2494 (emphasis added). Reading 18 U.S.C. §§ 1151-53 in concert with the Supreme Court's analysis in Castro-Huerta, it becomes clear that Congress has chosen to exercise its authority over a particular territory (Indian Country) and over a particular people (Indians), not a type of controversy, at most preempting Oklahoma's territorial and personal jurisdiction over Indians in Indian Country.
¶13 Turning next to Bracker balancing preemption, the Supreme Court's analysis in Castro-Huerta is instructive. The Supreme Court considered (1) whether the exercise of state jurisdiction would infringe on tribal self-government, (2) whether state prosecution would harm the federal interest in protecting Indians, and (3) the strength of the state's interest in ensuring public safety and criminal justice within its territory. Castro-Huerta, 142 S.Ct. at 2501-02.
¶14 Reviewing the given factors to determine whether Bracker balancing seeks to preempt a state's subject matter jurisdiction, or something else, none of the factors consider the type of controversy before the Court. To the contrary, they consider the sovereign interests implicated by the Indian status of the defendant and/or victim. See Castro-Huerta, 142 S.Ct. at 2501-02. Therefore, Bracker balancing is only triggered once the territorial and personal jurisdiction components are satisfied and is not impacted by the type of controversy. As a result, Bracker balancing does not operate to preempt Oklahoma district courts' subject matter jurisdiction.
¶15 Ultimately, subject matter jurisdiction considers the type of controversy before the district court, not the parties, territory, or sovereigns at issue. While those other concerns may be relevant to a district court, they are not relevant to a determination of its subject matter jurisdiction. Therefore, we hold that Oklahoma district courts' subject matter jurisdiction is not preempted, and Petitioner waived his claim that the trial court lacked any personal or territorial jurisdiction. To the extent that our prior cases have held otherwise, they are overruled by today's decision.
[7] Just as a plea at formal arraignment "waives any defect in the information, except that the court has no jurisdiction of the subject matter and that no public offense has been committed[,]" so too does a plea of guilty or no contest to the charges. See Wright v. State, 1973 OK CR 9, ¶ 40, 505 P.2d 507, 514.
¶16 Moreover, Petitioner has wholly failed to prove preemption. State v. Brester, 2023 OK CR 10, ¶ 36, 531 P.3d 125, 137-38; Castro-Huerta, 142 S.Ct. at 2494 ("[T]he [United States Supreme] Court's precedents establish that Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country."). Petitioner neither demonstrates to this Court that any federal statute preempted the trial court's jurisdiction (subject matter, personal, or territorial), nor that Bracker balancing worked to preempt.[8] As a result, Petitioner cannot demonstrate a (1) clear legal right to dismissal, nor (2) that the trial court refused to perform a plain legal duty to dismiss. Rule 10.6(B), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2023).
¶17 To be clear, this case does not confer or recognize a power by the State to prosecute Indians in Indian Country.
[9] Nor does it bypass McGirt or address any substantive argument as to preemption, as the dissent alleges.[10] This Court solely finds that Petitioner's claim is no longer shielded from procedural bars by the cloak of subject matter jurisdiction. As a result, this Court does not address any substantive claim as to preemption since Petitioner has forfeited such a claim from review.
¶18 In light of the above, Petitioner has failed to demonstrate he is entitled to the extraordinary relief of a writ of mandamus.

DECISION
¶19 Petitioner's application for extraordinary writ is DENIED. The matter is REMANDED to the Okfuskee County District Court for proceedings not inconsistent with this order.

A WRIT OF MANDAMUS FROM THE DISTRICT COURT OF
OKFUSKEE COUNTY, THE HONORABLE LAWRENCE PARISH,
DISTRICT JUDGE
APPEARANCES ON APPEAL

CURTIS M. ALLEN
205 S. GRAND, STE. 100.
OKMULGEE, OK 74447
COUNSEL FOR PETITIONER

HONORABLE LAWRENCE PARISH
DISTRICT JUDGE
OKFUSKEE COUNTY DIST. CT.
PO BOX 222
OKEMAH, OK 74859
RESPONDENT
GENTNER F. DRUMMOND
ATTORNEY GENERAL
OF OKLAHOMA
RANDALL YOUNG
ASSISTANT ATTORNEY
GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
RESPONSE DIRECTED BY COURT

 
OPINION BY: MUSSEMAN, J.
ROWLAND, P.J.: Specially Concur
HUDSON, V.P.J.: Dissent LUMPKIN, J.: Specially Concur
LEWIS, J.: Dissent
FOOTNOTES
[1] The parties stipulated that Petitioner was an enrolled member of the Muscogee Nation, he possessed Indian blood, and his crimes occurred within the Muscogee Reservation's boundaries.
[2] Oklahoma lower courts were unified into one district court after the adoption of Article VII, Section 7, of the Oklahoma Constitution in 1967.
[3] 18 U.S.C. § 1153.
[4] Oklahoma v. Castro-Huerta, 597 U.S. __, 142 S.Ct. 2486 (2022).
[5] White Mountain Apache Tribe v. Bracker, 448 U.S. 136 (1980).
[6] Compare International Longshoremen's Ass'n, AFL-CIO v. Davis, 476 U.S. 380 (1986) (National Labor Relations Act preempts state subject matter jurisdiction) and 29 U.S.C. § 151 et seq. (National Labor Relations Act) with Castro-Huerta, 597 U.S. __, 142 S.Ct. 2486 (Oklahoma has concurrent jurisdiction with federal government over a non-Indian committing a non-major crime against an Indian victim in Indian Country), 18 U.S.C. §§ 1151 (defining Indian Country), 1152 (Indian General Crimes Act), and 1153 (Indian Major Crimes Act).
[7] See, e.g., Magnan v. State, 2009 OK CR 16, 207 P.3d 397; Hogner v. State, 2021 OK CR 4, 500 P.3d 629; and McClain v. State, 2021 OK CR 38, 501 P.3d 1009.
[8] The burden is on the Petitioner to demonstrate a clear legal right to the relief sought which, in this case, requires a showing of preemption. To hold otherwise would diminish this Court's consistently narrow approach to the otherwise extraordinary relief of writs. McGuire v. State, 1997 OK CR 68, ¶ 2, 947 P.2d 563, 564 ("Mandamus is not a writ to be taken lightly. By its very nature, mandamus is an extraordinary writ . . ..") (quoting Canady v. Reynolds, 1994 OK CR 54, ¶ 26, 880 P.2d 391, 398)).
[9] To the extent the State has the power to prosecute Indians in Indian Country, that will be for future cases to decide. See Brester, 2023 OK CR 10, ¶ 36, 531 P.3d at 137-38.
[10] The Supreme Court assumed the application of "procedural obstacles" to Indian Country claims in both state and federal courts. McGirt, 140 S. Ct. at 2479. The only case offered by the dissent in support of this allegation of bypass is Davis, a Supreme Court case specifically about not just federal preemption, but preemption of a state's subject matter jurisdiction as it relates to the National Labor Relations Act. Davis, 476 U.S. at 393 (explaining a claim of pre-emption by the National Labor Relations Act is a claim that the state court has no power to adjudicate the subject matter of the case). Since this Court finds that the preemptive effects, if any, of 18 U.S.C. §§ 1151 -- 1153 and Bracker balancing do not work to preempt Oklahoma's subject matter jurisdiction, the United State's Supreme Court's holding in Davis is inapplicable.

ROWLAND, PRESIDING JUDGE, SPECIALLY CONCURRING:
¶1 I agree that criminal jurisdiction in Indian country does not implicate the State of Oklahoma's subject matter jurisdiction. As I have written many times in our prior cases, the subject matter jurisdiction of Oklahoma courts is established by Article 7 of the Oklahoma Constitution and Title 20 of our statutes, which grant general criminal jurisdiction to our district trial courts. Congress did not grant this jurisdiction, and under basic rules of federalism, Congress cannot take it away. McClain v. State, 2021 OK CR 38, ¶¶ 1-2, 501 P.3d 1009, 1012 (Rowland, P.J. Specially Concurring); Hogner v. State, 2021 OK CR 4, ¶ 4, 500 P.3d 629, 638 (Rowland, V.P.J. Concurring in Result).
¶2 What Congress can do, and has done, is exercise its own territorial or in personam jurisdiction over Indians in Indian country by virtue of its plenary power to regulate affairs with Indian tribes. See South Dakota v. Yankton Sioux Tribe, 522 U.S. 329, 343 (1998) ("Congress possesses plenary power over Indian affairs, including the power to modify or eliminate tribal rights."). But, as explicitly stated by the United States Court of Appeals for the Tenth Circuit, it is not the State's subject matter jurisdiction which is preempted in cases under the Major Crimes Act or the General Crimes Act.
When we speak of jurisdiction, we mean sovereign authority, not subject matter jurisdiction. Cf. [United States v.] Prentiss, 256 F.3d [971,] 982 (disclaiming the application of subject matter jurisdiction analysis to cases involving an inquiry under the ICCA). This is consistent with use of the term in United States v. McCraney, 104 U.S. 621, 623--4, 26 L.Ed. 869 (1881). 

United States v. Langford, 641 F.3d 1195, 1197 n.1 (10th Cir. 2011). In fact, the United States Supreme Court has never characterized preemption in this context as subject matter jurisdiction, and in McGirt v. Oklahoma, 140 S. Ct. 2452, 2460 (2020), the majority stated that Oklahoma had put aside whatever procedural defenses it might have, seeking instead a ruling on the merits. Those procedural defenses would not be relevant if subject matter jurisdiction were implicated because it is non-waivable and can be raised at any point in litigation.
¶3 This is an important distinction, because unlike subject matter jurisdiction, territorial and in personam jurisdiction are subject to waiver. See Application of Poston, 1955 OK CR 39, ¶ 35, 281 P.2d 776, 785 (denying writ of habeas corpus based on claim that district court lacked territorial jurisdiction because claim was waived for petitioner's failure to raise challenge during plea process). Furthermore, characterizing it as something other than subject matter jurisdiction is the only way to explain our holding in State ex rel. Matloff v. Wallace, 2021 OK CR 21, 497 P.3d 686, cert. denied sub nom., Parish v. Oklahoma, 142 S. Ct. 757 (2022). There, we held that McGirt claims which likely would have been viable at the time of trial, had they been raised, may no longer be pursued because the conviction is final.[1] 

¶4 In my view, the only time Congress may preempt the subject matter jurisdiction of state courts is when Congress itself has created the cause of action in question and expressly limited jurisdiction over those federal causes of action to federal courts. See Int'l Longshoremen's Ass'n, AFL-CIO v. Davis, 476 U.S. 380, 388, (1986) (interpreting the Federal Labor Relations Act). Were it otherwise, Congress could legislatively interfere with the authority of state courts to hear any and all types of state crimes or civil causes of action, and as noted above, this offends basic rules of federalism and state sovereignty.

¶5 Holding that the subject matter jurisdiction of Oklahoma district courts has not been preempted is consistent with federal precedent and, in my view, is a sound decision that is long overdue. Deo elected to submit himself to the Okfuskee County District Court and took advantage of placement in its drug court program. If he did not desire to waive his right, he was duty bound to protest when he knew that his right was being violated. Instead, he waited two years after the decision in McGirt was decided and the State had filed a motion to terminate his participation in drug court. Having entered his plea, participated in drug court, and reserved his protest until now, he is too late, and he has waived his McGirt claim.

FOOTNOTES
[1] The reason this case is not governed by Matloff is because Deo's convictions are not final.

HUDSON, VICE PRESIDING JUDGE, DISSENTING:
¶1 The majority's approach in this case raises more questions than answers and is contrary to clearly established Federal law as determined by the Supreme Court of the United States. The majority opinion rebrands our consideration of Indian Country jurisdictional challenges based on McGirt v. Oklahoma, 140 S. Ct. 2452 (2020) from matters involving subject matter jurisdiction under state law to matters involving only personal and territorial jurisdiction--thereby bypassing McGirt.
¶2 The majority opinion reinvents Indian country jurisdiction and offers very little that is new or useful. The United States Supreme Court already told us how to analyze these claims. In Oklahoma v. Castro-Huerta, 142 S. Ct. 2486 (2022), the Supreme Court held that "Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country." Id. at 2494. Further, Castro-Huerta held that the General Crimes Act does not say that federal jurisdiction is exclusive in Indian country or that state criminal jurisdiction is preempted in Indian country. Id. at 2494-95 (discussing 18 U.S.C. § 1152). Thus, "[u]nder the General Crimes Act . . . both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." Id. at 2495.
¶3 Nonetheless, courts must still apply the balancing test from White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 142-43 (1980). This is because "even when federal law does not preempt state jurisdiction under ordinary preemption analysis, preemption may still occur if the exercise of state jurisdiction would unlawfully infringe upon tribal self-government." Castro-Huerta, 142 S. Ct. at 2500-01 (emphasis added). The Bracker balancing test "considers tribal interests, federal interests, and state interests." Id. at 2501. Castro-Huerta applied the Bracker balancing test to the facts of that case, viz., the State's prosecution of a non-Indian defendant for a crime perpetrated against an Indian victim. The Court assessed the impact of the exercise of state jurisdiction in that case on the relevant tribal interests, federal interests and state interests. The Court concluded that the exercise of state jurisdiction in Castro-Huerta would not infringe on tribal self-government. Castro-Huerta, 142 S. Ct. at 2501-02.
¶4 The Castro-Huerta court summarized its analysis as follows:
Because Indian country is part of a State, not separate from a State, the second question here--the question regarding the State's jurisdiction to prosecute Castro-Huerta--is also straightforward. Under the Constitution, States have jurisdiction to prosecute crimes within their territory except when preempted (in a manner consistent with the Constitution) by federal law or by principles of tribal self-government. As we have explained, no federal law preempts the State's exercise of jurisdiction over crimes committed by non-Indians against Indians in Indian country. And principles of tribal self-government likewise do not preempt state jurisdiction here.

Id. at 2502-03 (emphasis added).
¶5 The Supreme Court's direction could not be clearer in the context of the state's authority to prosecute offenses covered by the General Crimes Act. Castro-Huerta effectively "fram[es] Indian-country jurisdictional issues as preemption defenses." Pacheco v. Habti, 62 F.4th 1233, 1242 n.7 (10th Cir. 2023). "Pre-emption, the practical manifestation of the Supremacy Clause, is always a federal question." International Longshoremen's Ass'n, AFL-CIO v. Davis, 476 U.S. 380, 388 (1986). "Ordinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. Such a defense asserts that the state claims have been substantively displaced by federal law." Devon Energy Prod. Co., L.P., v. Mosaic Potash Carlsbad, Inc., 693 F.3d 1195, 1203 n.4 (10th Cir. 2012) (internal quotation omitted).
¶6 The federal issue before this Court in resolving Indian country jurisdiction claims is whether the State of Oklahoma's criminal jurisdiction has been preempted either expressly by federal law or by principles of tribal self-government. The present case is governed by both the Major Crimes Act and the General Crimes Act and involves an Indian defendant who committed crimes on the Creek Reservation. Pursuant to Castro-Huerta, the General Crimes Act does not preempt state jurisdiction over Petitioner's crimes. Whether the Major Crimes Act preempts state jurisdiction, however, was not resolved in Castro-Huerta. Setting aside that issue, the question remains whether principles of tribal self-government preempt state jurisdiction in this case. We must apply the Bracker balancing test to determine whether the exercise of state jurisdiction would unlawfully infringe upon tribal self-government. Castro-Huerta, 142 S. Ct. at 2495-96. This, in turn, requires our consideration of tribal interests, federal interests and state interests.
¶7 The majority says nothing about tribal, federal or state interests, let alone attempt to balance these interests with the State's assertion of jurisdiction over a tribal citizen on the Creek reservation as required by the Supreme Court's cases. This is surprising considering (1) the Supreme Court's explicit application of the Bracker balancing test in Castro-Huerta to affirm the State's jurisdiction; and (2) the Court's clear pronouncement in Castro-Huerta that "this case does not involve the converse situation of a State's prosecution of crimes committed by an Indian against a non-Indian in Indian country. We express no view on state jurisdiction over a criminal case of that kind." Castro-Huerta, 142 S. Ct. at 2501 n.6.
¶8 Instead, the majority opinion tells us that Congress really didn't preempt Oklahoma's jurisdiction over Indians in Indian country after all. This theory turns largely on the specific terminology used by this Court to describe Indian country jurisdictional claims ("subject matter" jurisdiction versus "personal" and/or "territorial" jurisdiction) and the majority's belief that Bracker does not consider the type of controversy before the Court. For the majority, if the Indian country jurisdictional claim does not invoke "subject matter" jurisdiction, then we can simply waive McGirt claims on state law grounds when they were not raised before trial or plea.
¶9 The problem with this approach is that it conflicts with Castro-Huerta's express holding that the Constitution thwarts state criminal jurisdiction when preempted either by federal law or principles of tribal self-government. When this type of claim is raised before conviction, it must be considered and resolved by the district court. This type of jurisdictional challenge is not waivable before the final judgment and sentence is imposed. Cf. Davis, 476 U.S. at 382, 387-93 (rejecting Alabama supreme court's application of state waiver rule to defense claim, raised for the first time post-verdict but before entry of judgment by the trial court, that state tort suit was preempted by National Labor Relations Act; such a claim "is in the nature of a challenge to the court's power to adjudicate that may be raised at any time" and must be considered and resolved on the merits by the state court).

¶10 Bracker does take into consideration the nature of the action at issue in conducting the balancing of interests at issue in any given case. Bracker calls for "a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." Bracker, 448 U.S. at 145. The exercise of state authority in the present case is the State's prosecution of Petitioner, an Indian, for the commission of burglary and other crimes in Indian country. It is this exercise of state authority that must be balanced against the "broad policies that underlie" any treaties, statutes and "notions of sovereignty that have developed from historical traditions of tribal independence" in applying Bracker. Id.
¶11 The majority does not explain how Oklahoma's jurisdiction over the Indian defendant in this case for crimes that occurred in Indian country is proper under federal law. When Petitioner has not even been convicted of the crimes at issue (he is still serving a deferred sentence with an application to accelerate pending), we must apply McGirt, a new procedural rule, to his case. State ex rel. Matloff v. Wallace, 2021 OK CR 21, ¶ 28, 497 P.3d 686, 691 ("the procedural rule announced in McGirt was new"). Cf. Edwards v. Vannoy, 141 S. Ct. 1547, 1554 (2021) ("A new rule of criminal procedure applies to cases on direct review, even if the defendant's trial has already concluded."); Matloff, 2021 OK CR 21, ¶ 8, 497 P.3d at 689 ("New rules of criminal procedure generally apply to cases pending on direct appeal when the rule is announced, with no exception for cases where the rule is a clear break with past law."); McClain v. State, 2021 OK CR 38, ¶¶ 2, 15, 501 P.3d 1009, 1010, 1012 (granting relief where Indian country jurisdictional claim based on McGirt was raised for the first time in a defense motion filed after briefing was completed on direct appeal). By failing to apply McGirt and to dismiss this case, the majority has singled out Petitioner for differing treatment from previous inmates in a similar position procedurally who came before this Court with a similar issue.[1] 

¶12 The majority's attempt to bypass this analysis by claiming that Petitioner waived his Indian country jurisdictional challenge is contrary to the record before this Court, not to mention how we have applied McGirt in the past. Petitioner's guilty pleas and deferred sentences were entered before McGirt was handed down in 2020. Petitioner filed his first jurisdictional challenge based on McGirt on May 4, 2021, in the form of an application for post-conviction relief. The district court denied this application, finding that Petitioner was ineligible for post-conviction relief because he had not been convicted in either of his cases. On August 31, 2022, Petitioner returned with counsel and filed a motion to dismiss based on the trial court's conclusion that his conviction was not yet final. The trial court denied this motion as well. Nothing in these facts suggests unnecessary delay or some other dilatory conduct by Petitioner in presenting his Indian country jurisdictional claim based on McGirt. On the contrary, Petitioner diligently presented his claim to the district court not once, but twice.

¶13 The majority's complaint that Petitioner had the burden to prove preemption is contrary to the Supreme Court's pronouncements in this area. The Court has recognized that "'in exceptional circumstances a State may assert jurisdiction over the on-reservation activities of tribal members.'" California v. Cabazon Band of Mission Indians, 480 U.S. 202, 215 (1987) (quoting New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 331-32 (1983)). The Court has also stated that "[w]hen on-reservation conduct involving only Indians is at issue, state law is generally inapplicable, for the State's regulatory interest is likely to be minimal and the federal interest in encouraging tribal self-government is at its strongest." Bracker, 448 U.S. at 144. Accord Nevada v. Hicks, 533 U.S. 353, 362 (2001). Nothing in Castro-Huerta displaces these pronouncements and they clearly apply to this case. Here, the State of Oklahoma asserted its criminal jurisdiction under the state's penal laws over the on-reservation conduct of Petitioner, an Indian. The only parties to this suit are the State and the Indian defendant. Cf. Castro-Huerta, 142 S. Ct. at 2501 (recognizing that the only parties to the state criminal prosecution in Castro-Huerta were the State and the non-Indian defendant). Faced with Petitioner's motion to dismiss in district court backed by prima facie evidence as to his legal status as an Indian and the location of the crime on the Creek reservation, see Hogner v. State, 2021 OK CR 4, ¶ 4, 500 P.3d 629, 631, the State--not the defendant--had the burden of demonstrating that the principals of tribal self-government do not preempt state jurisdiction and that this case is one of the exceptional circumstances in which it may assert jurisdiction over tribal members on the reservation.
¶14 Moreover, it is absurd to suggest that Petitioner was required to address the Bracker balancing test when (1) neither the State nor the district court raised the matter below or on appeal; and (2) the Supreme Court has not yet held in a case that the State may prosecute an Indian for a violation of state law on the reservation after applying Bracker.
¶15 Far from being a "silver bullet" that clarifies and enlightens, the majority's singular focus on the correct label to use for Indian country jurisdiction claims injects confusion into an already difficult area of the law. Most importantly, the majority's approach ignores the Supreme Court's mandate in Castro-Huerta that state courts consider as a matter of federal law whether the exercise of state jurisdiction is preempted because it would unlawfully infringe upon tribal self-government. The Tribes no doubt will express strong reasons against state criminal jurisdiction in this and similar cases. Today's opinion effortlessly dismisses those potential concerns.
¶16 For the above reasons, I respectfully dissent.

FOOTNOTES
[1] Our decision not to apply McGirt retroactively to final state convictions, and to apply procedural bars on post-conviction review to Indian country jurisdictional claims, is not inconsistent with this approach. See Matloff, 2021 OK CR 21, ¶¶ 35-40, 497 P.3d at 693-94. The Supreme Court has sanctioned the use of such legal doctrines to limit the disruptive effect of McGirt, particularly based on the reasonable--but mistaken--understanding in Oklahoma for over a century that reservations did not still exist in this state. See McGirt, 140 S. Ct. at 2479 & n.15, 2481. The Tenth Circuit, based on Supreme Court caselaw, likewise applied the nonretroactivity principles of Teague v. Lane, 489 U.S. 288 (1989) in an unrelated case to deny habeas relief to defendants prosecuted in federal court where jurisdiction was predicated on an incorrect determination that the location of the crime was on an Indian reservation. United States v. Cuch, 79 F.3d 987, 990-94 (10th Cir. 1996). The Supreme Court, by contrast, has never sanctioned the theory of jurisdiction endorsed by the majority here.

LUMPKIN, JUDGE, SPECIALLY CONCURRING:
¶1 I compliment Judge Musseman for clearly and succinctly setting the correct plumb line regarding the application of subject matter jurisdiction. Over the years this Court has correctly stated that subject matter jurisdiction cannot be waived but the broad use of the term resulted in the loss of its meaning. This opinion focuses on the true meaning of subject matter jurisdiction and the manner in which it may be pre-empted but never lost by the courts in Oklahoma. State/federal jurisdictional issues are complex and sometimes foggy. Through this opinion the Court provides a methodology to analyze and cut through the fog that often engulfs the determination when presented in actual cases, often those involving Indian tribes.
¶2 As the opinion sets forth, the Oklahoma Constitution vests the district courts with subject matter jurisdiction over ALL justiciable issues. That power does not change and is always present: it is the power to act. Regrettably, past opinions have not made the distinction between the vested authority of the state courts set out in our Constitution and incidents where that power is not applicable. Examples include where the crime occurred on land upon which the federal government has pre-empted state jurisdiction or where the crime involves specified persons who fall under federal authority. This legal distinction has now been defined by the Supreme Court in Oklahoma v. Castro-Huerta, 597 U.S. __, 142 S.Ct. 2486, 2493-94 (2022). That opinion gives this Court guidance in going forward in the recognition of the need to recede from the over-broad use of the term, "subject matter jurisdiction" and turn our attention to defining the specific type of pre-emption of that authority in a particular situation.
¶3 This recalibration or perspective and use of terminology is not limited to this Court. Chief Justice Roberts in his dissent to McGirt also mislabeled the issue as subject matter jurisdiction. As the law evolves, we learn to refine the syntax of our opinions to more clearly define the exact nature of the legal issue presented rather than speak in broad terms that lead to future misdirection of the type of analysis required. All persons learn as the passage of time further illuminates learning and understanding.
¶4 The disparate use of the term between state and federal courts, as evidenced by Chief Justice Roberts' use of the term, "subject matter jurisdiction" in his dissent to McGirt, is because these courts acquire subject matter jurisdiction in different ways. In Oklahoma, Article 7 of the Oklahoma Constitution confers subject matter jurisdiction on the district courts, while the federal district courts gain subject matter jurisdiction through proof of the elements in particular crimes. The divergent manner in which these courts acquire subject matter jurisdiction, together with the general use of that term without making the distinction as to the manner of acquisition in a particular case, has led to parties talking past one another due to the fact each was talking based on a federal versus state application and vice versa.
¶5 This discussion also requires the realization that Indian tribes are not legally sovereign in the full meaning of the word. Legally, Indians and their tribes remain wards of the federal government and have sovereignty only as allowed by the federal government. That sovereignty is generally limited to the internal functions of tribal government. This opinion, clarifying the use of the term, "subject matter jurisdiction," also reveals the limited application of the term, "sovereignty." Indians, regardless of tribe, are citizens of the State of Oklahoma and subject to its laws. However, as in ecclesiastical matters, the State does not infringe on truly internal tribal functions in the enforcement of its laws.
¶6 The Supreme Court laid the foundation for the interpretation of the limited application of the concept of sovereignty for Indian tribes in Cherokee Nation v. Georgia, 30 U.S. 1 (1831). There the Court held tribes were not foreign nations and the Supreme Court was not the proper forum in which they could seek redress. Id., at 20. While the United States Congress over the years has adjusted the rights tribes do have to seek legal redress, the analysis in Cherokee Nation regarding the status of tribes and the concept of their limited sovereignty under the supervision of the federal government has not changed. Chief Justice Marshall provided the following guidance as to the legal status of tribes and the limited sovereignty they possess, to-wit:
The Indian territory is admitted to compose a part of the United States. In all our maps, geographical treatises, histories, and laws, it is so considered. In all our intercourse with foreign nations, in our commercial regulations, in any attempt at intercourse between Indians and foreign nations, they are considered as within the jurisdictional limits of the United States, subject to many of those restraints which are imposed upon our own citizens. They acknowledge themselves in their treaties to be under the protection of the United States; they admit that the United States shall have the sole and exclusive right of regulating the trade with them, and managing all their affairs as they think proper; and the Cherokees in particular were allowed by the treaty of Hopewell, which preceded the constitution, 'to send a deputy of their choice, whenever they think fit, to congress.' Treaties were made with some tribes by the state of New York, under a then unsettled construction of the confederation, by which they ceded all their lands to that state, taking back a limited grant to themselves, in which they admit their dependence.
Though the Indians are acknowledged to have an unquestionable, and, heretofore, unquestioned right to the lands they occupy, until that right shall be extinguished by a voluntary cession to our government; yet it may well be doubted whether those tribes which reside within the acknowledged boundaries of the United States can, with strict accuracy, be denominated foreign nations. They may, more correctly, perhaps, be denominated domestic dependent nations. They occupy a territory to which we assert a title independent of their will, which must take effect in point of possession when their right of possession ceases. Meanwhile they are in a state of pupilage. Their relation to the United States resembles that of a ward to his guardian.
They look to our government for protection; rely upon its kindness and its power; appeal to it for relief to their wants; and address the president as their great father. They and their country are considered by foreign nations, as well as by ourselves, as being so completely under the sovereignty and dominion of the United States, that any attempt to acquire their lands, or to form a political connexion with them, would *18 be considered by all as an invasion of our territory, and an act of hostility.

Cherokee Nation, 30 U.S. at 17--18.
¶7 This analysis still applies today. It provides a legal basis for the application of the Bracker analysis, outlined in Castro-Huerta and set forth in this opinion, to determine if the State of Oklahoma's action infringes on internal tribal affairs in cases where Congress has not specifically pre-empted the Constitutional jurisdiction of the State of Oklahoma. This authority, together with the historical basis which forms it, should provide the bench and bar of our state judicial system the guidance it needs in dealing with cases of this type in the future.

LEWIS, JUDGE, DISSENT:
¶1 I respectfully dissent. States have no jurisdiction of crimes committed by Indians in Indian Country unless it is expressly conferred by Congress. See Fisher v. District Court, 424 U.S. 382, 386 (1976); DeCoteau v. District County Court, 420 U.S. 425, 427, n.2 (1975); McClanahan v. Arizona State Tax Commission, 411 U.S. 164, 170-172 (1973); Williams v. Lee, 358 U.S. 217, 220 (1959); United States v. Pelican, 232 U.S. 442, 449-450 (1914), and United States v. Kagama, 118 U.S. 375, 383-384 (1886).
¶2 "No jurisdiction" means no jurisdiction, no sovereign authority to act. Congress has never conferred criminal jurisdiction over Indians in Indian Country on the State of Oklahoma. Ross v. Neff, 905 F.2d 1349, 1352 (10th Cir. 1990). Nor can the United States Supreme Court, or this Court, presume to do so based on dicta in a footnote to Oklahoma v. Castro-Huerta. The holding in Castro-Huerta plainly has no application to Indian defendants in Indian Country.
¶3 "[U]nless Congress provides an exception to the rule--and it hasn't here--states possess 'no authority' to prosecute Indians for offenses in Indian country." Ute Indian Tribe v. Utah (Ute VI), 790 F.3d 1000, 1004 (10th Cir. 2015)(quoting Cheyenne-Arapaho Tribes v. Oklahoma, 618 F.2d 665, 668)(10th Cir. 1980)(finding unauthorized state prosecutions of Indians in Indian Country would cause irreparable injury to tribal sovereignty); see also, 18 U.S.C. § 1162 (allowing some states, but not Oklahoma, jurisdiction to prosecute crimes by Indians in Indian Country).
¶4 Petitioner is an Indian facing prosecution for crimes he committed in Indian Country. Under prior cases, this dispositive challenge to the State's authority to prosecute him was not waived or forfeited by his failure to raise it before his guilty plea and deferral of the sentence to allow treatment in Drug Court. See, e.g., Ricker v. State, 2022 OK CR 26, ¶¶ 5, 13, 519 P.3d 1269, 1271-72 (denying petitioner's McGirt challenge in certiorari appeal from guilty plea on the merits of his non-Indian status, rather than deeming it forfeited by plea). Post-McGirt sovereignty-based challenges have been sustained by this Court even when raised for the first time in cases pending on direct appeal. McClain v. State, 2021 OK CR 38, 501 P.3d 1009 (reversing and remanding with instructions to dismiss rape and lewd acts convictions against Indian defendant for crimes in Indian Country).
¶5 Petitioner has the same clear legal right to dismissal of this pending state prosecution, because "it's long since settled that a state and its subdivisions generally lack authority to prosecute Indians for criminal offenses arising in Indian country." Ute Indian Tribe, 790 P.3d at 1006 (emphasis added). The majority today conjures no credible authority for its contrary position; and yet seems undeterred by a "considerable and uniform body of authority stacked against it." Id.; see also Ute Indian Tribe v. Myton, 832 F. 3d 1220 (10th Cir. 2016)(noting, with obvious irritation, the State of Utah's relentless campaign to prosecute tribal members for crimes committed on lands clearly recognized as Indian Country in prior cases).
¶6 Oklahoma will have jurisdiction (or sovereign authority, if you like) to prosecute Indians in Indian Country when Congress has granted that authority by statute, and not a minute sooner. Neither Castro-Huerta's footnotes, nor doubtful implications gleaned from other cases, nor this Court's wishful thinking can confer sovereign authority that Congress has plainly denied.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1994 OK CR 54, 880 P.2d 391, 
CANADY v. REYNOLDS
Discussed

 
1926 OK CR 259, 248 P. 877, 35 Okl.Cr. 116, 
Armstrong v State
Discussed

 
1927 OK CR 33, 252 P. 861, 36 Okl.Cr. 111, 
Forrester v State
Discussed

 
2006 OK CR 51, 152 P.3d 244, 
COX v. STATE
Discussed at Length

 
2009 OK CR 16, 207 P.3d 397, 
MAGNAN v. STATE
Discussed at Length

 
2016 OK CR 7, 371 P.3d 1127, 
STATE v. VINCENT
Discussed

 
2021 OK CR 4, 500 P.3d 629, 
HOGNER v. STATE
Discussed at Length

 
2021 OK CR 21, 497 P.3d 686, 
STATE ex rel. MATLOFF v. WALLACE
Discussed at Length

 
2021 OK CR 38, 501 P.3d 1009, 
MCCLAIN v. STATE
Discussed at Length

 
2022 OK CR 26, 519 P.3d 1269, 
RICKER V. STATE
Discussed

 
2023 OK CR 10, 531 P.3d 125, 
STATE v. BRESTER
Discussed at Length

 
1955 OK CR 39, 281 P.2d 776, 
APPLICATION OF POSTON
Discussed

 
1945 OK CR 92, 162 P.2d 205, 81 Okl.Cr. 176, 
Ex parte Wallace
Discussed

 
1973 OK CR 9, 505 P.2d 507, 
WRIGHT v. STATE
Discussed

 
1997 OK CR 68, 947 P.2d 563, 68 OBJ 3645, 
McGuire v. State
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA